UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------- x
                                        :

UNITED STATES OF AMERICA,          :
                                         :

               Plaintiff,      :       No. 10 Crim. 1205 (PAC)
                                         :

       v.                               :

LOUIS TOMASETTA and EUGENE HOVANEC,   :
                                         :

               Defendants.     :

--------------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' <br> MOTION FOR JUDGMENT OF ACQUITTAL

**BIRD, MARELLA, BOXER, WOLPERT,**
**NESSIM, DROOKS & LINCENBERG, P.C.**
Gary S. Lincenberg (admitted *pro hac vice*)
Peter J. Shakow (admitted *pro hac vice*)
1875 Century Park East, 23rd Floor
Los Angeles, California  90067
310.201.2100

*Attorneys for Defendant Eugene Hovanec*

**MORRISON & FOERSTER** LLP
Dan Marmalefsky (admitted *pro hac vice*)
707 Wilshire Boulevard, Suite 6000
Los Angeles, California 90017-3543
213.892.5200

Lawrence Gerschwer
Katie L. Viggiani
1290 Avenue of the Americas
New York, New York 10104-0050
212.468.8000

*Attorneys for Defendant Louis Tomasetta*

la-1208736

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ..................................................................................................... 1

II.     THE GOVERNMENT FAILED TO PROVE THE CHARGED CONSPIRACY............ 1

    A.      The Government Was Required to Prove a Conspiratorial Agreement
         Contemplating Both Revenue Inflation and Option Backdating .......................... 2

    B.      The Government Presented No Evidence of a Single Overarching
         Conspiracy ............................................................................................................ 3

         1.      The Government failed to prove the existence of the requisite
               conspiratorial agreement........................................................................ 3

         2.      The Government failed to prove that the options and revenue
               recognition aspects of the purported conspiracy were "mutually
               dependent" or assisted each other ........................................................... 7

III.    CONCLUSION........................................................................................................... 9

la-1208736

# TABLE OF AUTHORITIES

Page(s)

CASES

*Berger v. United States,*
   295 U.S. 78 (1935)..................................................................................................2

*United States v. Aracri,*
   968 F.2d 1512 (2d Cir. 1992)................................................................................2, 3

*United States v. Bayer,*
   331 U.S. 532 (1947)..................................................................................................6

*United States v. Berger,*
   224 F.3d 107 (2d Cir. 2000)..................................................................................2, 3

*United States v. Bertolotti*
   529 F.2d 149 (2d Cir. 1975)..................................................................................2, 9

*United States v. Herrera,*
   584 F.2d 1137 (2d Cir. 1978)..................................................................................1

*United States v. Johansen,*
   56 F.3d 347 (2d Cir. 1995)......................................................................................2

*United States v. Maldonado-Rivera,*
   922 F.2d 934 (2d Cir. 1990)....................................................................................3

*United States v. McDermott,*
   245 F.3d 133 (2d Cir. 2001)..................................................................................6, 7

*United States v. Nusraty,*
   867 F.2d 759 (2d Cir. 1989)....................................................................................3

OTHER AUTHORITIES

Fed. R. Crim. P. 29 ....................................................................................................1

## I.  INTRODUCTION

Louis Tomasetta and Eugene Hovanec have been under investigation for more than seven years.  Their actions while serving as officers of Vitesse have been poked, prodded, and examined in detail by internal investigators, civil plaintiffs, the Securities and Exchange Commission, the United States Postal Inspector, and the United States Attorney's Office for the Southern District of New York.  Twice they have faced lengthy criminal trials — in a courtroom a continent away from their homes and families — and twice the juries have deadlocked on the sole remaining charge (this last time by a count of 6-to-6),  Now the Government suggests that it will seek to try these defendants a *third* time.  For the reasons set forth below, however, this Court should end the case now and dismiss the Superseding Indictment with prejudice.

The evidence presented by the Government at the second trial was insufficient to sustain a conviction.  The operative Superseding Indictment charged Dr. Tomasetta and Mr. Hovanec with participating in a single, overarching conspiracy to inflate Vitesse's revenues improperly **and** to grant in-the-money stock options without recording compensation expenses.  The question is whether a reasonable jury could have found that, based on the evidence presented in this year's trial, the Government proved a single overarching conspiracy.  Since there was *no* evidence linking the two parts of the alleged scheme — much less proof beyond a reasonable doubt — the answer to that question is *no*.

## II.  THE GOVERNMENT FAILED TO PROVE THE CHARGED CONSPIRACY

A Court may "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."  Fed. R. Crim. P. 29.  Judgment of acquittal is warranted where no "reasonably minded jury could accept as adequate and sufficient the evidence and reasonable inferences therefrom to support the conclusion of the defendants' guilt beyond a reasonable doubt."  *United States v. Herrera*, 584 F.2d 1137, 1144 (2d Cir. 1978).  The

-1-

Government charged Defendants with a single overarching conspiracy to deceive Vitesse's investors by overstating revenues for product shipments to/from Nu Horizons Electronics *and* by understating compensation expenses for in-the-money stock options.  Despite years of exhaustive investigation, weeks of testimony, and thousands of separately marked exhibits, however, the Government failed to prove beyond a reasonable doubt the existence of such a single overarching conspiracy.  This failure entitles Defendants to entry of a judgment of acquittal.

A.      **The Government Was Required to Prove a Conspiratorial Agreement Contemplating *Both* Revenue Inflation *and* Option Backdating**

"Where one large conspiracy is charged, proof of different and disconnected smaller ones will not sustain a conviction."  *Berger v. United States,* 295 U.S. 78, 81 (1935).  *See also United States v. Johansen,* 56 F.3d 347, 350-52 (2d Cir. 1995) (reversing conspiracy convictions although the evidence provided "sufficient basis for the jury to find that several . . . conspiracies existed" because there was insufficient evidence "linking them together in a single overall conspiracy"); *United States v. Bertolotti* 529 F.2d 149, 154-55 (2d Cir. 1975) (reversing conspiracy convictions in a narcotics case because there was "no evidence linking [the individual transactions] together in a single overall conspiracy").  Whether there existed a single scheme or multiple schemes is determined by the scope of the conspiratorial agreement.  "'In order to prove a single conspiracy, the government must show that *each alleged member agreed to participate in what he knew to be a collective venture directed toward a common goal*.'"  *United States v. Aracri*, 968 F.2d 1512, 1521 (2d Cir. 1992) (quoting *United States v. Maldonado-Rivera*, 922 F.2d 934, 963 (2d Cir. 1990)) (emphasis added).  While coconspirators need not agree on every last detail, they must at the very least agree on the "essential nature of the plan."  *United States v. Berger*, 224 F.3d 107, 114 (2d Cir. 2000).  And while proof of a formal or express agreement is

not required, there must be *some evidence* that the conspirators "knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it."  *United States v. Nusraty*, 867 F.2d 759, 763 (2d Cir. 1989).  As demonstrated below, the Government failed to meet this bar.

Moreover, while a single conspiracy may exist despite "two or more phases or spheres of operation," that is true *"so long as there is sufficient proof of mutual dependence and assistance"* between those spheres.  *Berger*, 224 F.3d at 114-15; *accord Aracri*, 968 F.2d at 1520; *Maldonado-Rivera*, 922 F.2d at 963.  Because the Superseding Indictment charged a single overarching conspiracy, it was incumbent upon the Government to produce evidence "linking [the alleged revenue-inflation and option-backdating schemes] together in a single conspiracy." The Government presented no testimony or exhibit evidencing any such link.

**B.     The Government Presented No Evidence of a Single Overarching Conspiracy**

**1.     The Government failed to prove the existence of the requisite conspiratorial agreement**

Defendants here stand accused of conspiring to deceive Vitesse's investors by making false disclosures in SEC filings relating to stock options *and* revenue recognition.  Yatin Mody and Nicole Kaplan — the individuals at Vitesse with primary responsibility for preparation of the Company's financial statements and interaction with the outside auditors — testified extensively about their participation in a conspiracy to improperly recognize revenue.  In fact, both of them pled guilty to charges that they conspired to make false statements about Vitesse's revenue recognition practices in the Company's public financial reports.  Yet by their own uncontested testimony, these alleged coconspirators unequivocally confirmed that there was no single

overarching conspiracy embracing both revenue inflation and improper stock option accounting. In other words, from the very people one would have expected testimony about an overarching false accounting conspiracy, had one existed, there was nothing but silence.  There was silence because there was no overarching conspiracy.

Mody testified that he had no knowledge of or involvement in any plan to grant in-the-money options or to account for them improperly.  When asked if his guilty plea meant that he had "plea[d] guilty to any conspiracy that involved options backdating," Mody answered, "No." (RT 820:11-13.)  He testified that he never intentionally accounted for any option grant improperly.  (RT 817:20-22.)  Before the Wall Street Journal's publication of an article in March 2006 — an article that spurred an unprecedented industry-wide focus on stock option accounting — he "had no information to suggest" that Vitesse had ever backdated stock options. (RT 824:10-20.)  In fact, Mody testified that he never even discussed the subject of backdating stock options with Tomasetta, Hovanec, or Kaplan before November 2005, when reporters from the Wall Street Journal first contacted Vitesse.  (RT 827:7-10.)

Kaplan similarly testified that she never knew about or engaged in any conspiracy regarding accounting for stock options:

> Q.  When you told the government what you did wrong, you discussed what you did wrong in connection with your accounting for revenue recognition matters, correct?
>
> A.  Yes, and other things around revenue and accounts receivable.
>
> Q.  And none of it had to do with options backdating issues, correct?
>
> A.  No.

(RT 1836:19-1837:1.)  Kaplan flatly denied conspiring to account improperly for stock options. (RT 1883:21-1884:2:  ["Q: [W]ere you, to your knowledge, a member of a conspiracy to

-4-

improperly account for stock options?  A: To my knowledge, no."])  When asked if she ever intentionally accounted for stock options improperly, she, like Mody, answered:  "No." (RT 1884:3-5.)

Mody and Kaplan's testimony on this point was clear, absolute, and never rebutted.  The Government cannot now maintain that either of them participated in or even knew about this key aspect of the purported scheme.  Indeed, the Government conceded as much in summation, acknowledging that Mody and Kaplan were ignorant of the alleged options backdating and even arguing that this was because "they didn't need to be [involved]."  (RT 2742:19-2743:1.)  This argument, Mody and Kaplan's un-rebutted testimony, and the charging documents in their cases make clear that the Government believes Mody and Kaplan engaged in a discrete conspiracy involving revenue recognition — and revenue recognition alone.  They did not, in other words, enter into any agreement about a broader conspiracy that included falsely reporting how Vitesse accounted for stock options.  The Government introduced no evidence through its two star witnesses, then, that the scope of any conspiratorial agreement encompassed both revenue recognition and options.

Indeed, it introduced no such evidence through any witness at all.  None of the other four fact witnesses who testified at this year's trial provide any support for the notion that there was a single, overarching conspiracy.  Neither Richard Riker, the Vice President of Sales from 2001-04, nor David Bowers, an outsider to the Company, had any knowledge whatsoever about option grants or allegations of improper accounting for those grants.  They established no link between revenue and options.  Administrative Assistant Karen Keever and the outside lawyer, Frank Currie, had nothing to say about revenue recognition issues.  Not even the Government's "summary" or expert witnesses could help this cause; they, too, gave testimony

compartmentalized as relating to either options issues (Mr. Howard, the FINRA attorney and, ostensibly, the computer forensics expert Brian Gorczyk) or revenue recognition (Milazzo, Vondra, Salomon), but not both.  There simply was no testimony at all to establish that there was an agreement to commit a single overarching conspiracy to improperly account for options *and* improperly report revenue.  Given that the Government charged just such a single overarching conspiracy, this failure is fatal to the allegations against Dr. Tomasetta and Mr. Hovanec.

In its summation, the Government sought to save its case by pointing to a purportedly unifying *purpose*:  "The point of the scheme is to make the company look better so investors will want to buy the stock."  (RT 2742:5-18.)  But the Government cannot "redefine a conspiracy by its purpose, rather than by the agreement of its members to that purpose."  *United States v. McDermott*, 245 F.3d 133, 137 (2d Cir. 2001); *see also United States v. Bayer*, 331 U.S. 532, 542 (1947) (the essence of the crime of conspiracy "is in the agreement or confederation to commit a crime.").

In *McDermott*, the defendant was charged with and convicted of conspiring with two others to commit insider trading.  245 F.3d at 135-36.  McDermott allegedly shared inside information with his girlfriend, who then, unbeknownst to McDermott, passed the information along to a third person.  *Id.*  On appeal, McDermott challenged the sufficiency of the evidence to support the conspiracy conviction.  The Second Circuit found that while the evidentiary record supported a finding that McDermott conspired with his girlfriend, there was no evidence that the agreement encompassed a broader scope that included the third person.  *Id.* at 138.  Because the government had charged a conspiracy involving all three, proof of the smaller conspiracy between McDermott and his girlfriend was insufficient as a matter of law to sustain the conviction.  The government attempted to patch this evidentiary hole by arguing that "there was

a unitary purpose to commit insider trading based on information furnished by [the defendant]."
*Id.* at 137. The Second Circuit roundly rejected this attempt to supplant the essence of
conspiracy — the agreement — with an after-ascribed purpose, and reversed the conviction,
concluding the government "failed to show the most basic element of a single conspiracy,
namely, an agreement." *Id.* at 137-38.

The same holds true here. The Government elicited no testimony and introduced no
exhibits evidencing an overarching agreement to accomplish both aspects of the charged
conspiracy. No matter what *purpose* the Government chooses to ascribe to the actions of these
former Vitesse employees, it failed to prove any *agreement* to commit the charged conspiracy.

> **2.      The Government failed to prove that the options and revenue
>           recognition aspects of the purported conspiracy were "mutually
>           dependent" or assisted each other**

Nor did the Government introduce evidence sufficient to prove that the revenue
recognition and options schemes assisted one another or were mutually dependent spheres of a
single conspiracy.

First, Mody and Kaplan's testimony demonstrates that the two aspects operated
independently. There can be no argument that they were essential to any scheme involving false
accounting. They were, among other duties, primarily responsible for preparing and filing all of
the Company's financial reports throughout the time period, and for Vitesse's interactions with
the auditors from KPMG. Yet as noted above, the Government has conceded that Mody and
Kaplan were totally unaware of any alleged conspiracy to improperly account for stock options,
or to make false statements regarding those options in Vitesse's public financial reports.

Absent any evidence that the options and revenue schemes depended on one another, the Government argued in closing that the decision to backdate the April 2001 evergreen option grants was driven by Vitesse's decision to issue credits for returned merchandise over time rather than in the period the product was returned:  "You know there wasn't a compensation expense and you know exactly why.  These guys had just decided to hide tens of millions of dollars of credits for returned product.  There is no way they were going to record an expense that would have an even worse impact on their bottom line at this time."  (RT 2656:25-2658:4.)  The Government's argument, though, does not withstand scrutiny of the facts.  Under the Government's own theory of the case, the Compensation Committee approved the 2001 evergreen grants on April 12, 2001.  (RT 2657:1-14; *see* Gov. Ex. 473.)  The alleged conversation about "bleeding" credits, however, took place later.  Mody testified that the conversation followed his receipt of an April 20, 2001 email attaching a detailed analysis of Vitesse's accounts receivables and pending credits.  (Gov. Ex. 375; RT 501:20-509:21 ["It was in the middle of April [2001], right around the time that I first saw some version of this spreadsheet."].)  Thus, the events' sequence refutes the Government's only attempt to link the two alleged schemes together in a single conspiracy.

Unable to rely on testimony or exhibits evidencing any illicit agreement connecting Vitesse's sales accounting with its option accounting, the Government resorted to arguing this was a single conspiracy because the purportedly false statements about both options and revenue recognition were contained in the same SEC filings and received by the same investors. (RT 2742:13-18.)  This proves nothing about any conspiratorial *agreement* — a prerequisite to any conspiracy prosecution, and nothing about whether the two aspects of the alleged scheme were "mutually dependent" on one another.  The mere fact that both accounting practices —

along with most every other accounting practice — were reflected in Vitesse's financial reports is not sufficient evidence from which a reasonable juror could find beyond a reasonable doubt that there existed an illicit agreement contemplating both revenue inflation and option backdating.  Indeed, the Government's argument comes dangerously close to improper burden shifting, placing the onus on a criminal defendant to prove the existence of separate conspiracies.

The record makes clear that the Government "merely merged several conspiracies for the sake of convenience" and that the single overarching scheme alleged in the Superseding Indictment was merely "a product of the Government's imagination."  *Bertolotti*, 529 F.2d at 155.  For the reasons described above, Defendants are entitled to judgment of acquittal.

## III.   CONCLUSION

Despite years of investigation, weeks of testimony, and thousands of separately marked exhibits, the Government failed to present sufficient evidence from which a reasonable juror could find beyond a reasonable doubt that there existed the single overarching conspiracy

-9-

charged in the Superseding Indictment.  Accordingly, Defendants respectfully request that the

Court enter a judgment of acquittal.

Dated: Los Angeles, California  MORRISON & FOERSTER LLP
   April 29, 2013

           Dan Marmalefsky
           707 Wilshire Boulevard, Suite 6000
           Los Angeles, California  90017-3543
           213.892.5200

           Lawrence Gerschwer
           Katie L. Viggiani
           1290 Avenue of the Americas
           New York, New York 10104-0050
           212.468.8000

           By:  */s/ Dan Marmalefsky*
              Dan Marmalefsky
              *Attorneys for Defendant*
              *Louis Tomasetta*

Dated: Los Angeles, California  BIRD, MARELLA, BOXER, WOLPERT,
   April 29, 2013      NESSIM, DROOKS & LINCENBERG, P.C.

           Gary S. Lincenberg
           Peter J. Shakow
           1875 Century Park East, 23rd Floor
           Los Angeles, California  90067
           310.201.2100

           CLAYMAN & ROSENBERG
           Charles Clayman
           Isabelle Kirshner
           305 Madison Avenue
           New York, New York  10165
           212.922.1080

           By:  */s/ Peter Shakow*
              Peter Shakow
              *Attorneys for Defendant*
              *Eugene Hovanec*

-10-