**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 1, 2013

**By Hand Delivery**

The Honorable Jed S. Rakoff
United States District Judge
United States District Court
Southern District of New York
500 Peal Street
New York, NY 10007

                Re:    *United States v. Louis Tomasetta and Eugene Hovanec*
                        S2 10 Cr. 1205 (PAC)

Dear Judge Rakoff:

      The Government respectfully submits this letter in advance of the sentencings for defendants Louis Tomasetta ("Tomasetta") and Eugene Hovanec ("Hovanec"), which is scheduled for **November 7, 2013**. The Government respectfully recommends that the Court sentence the defendants to terms of probation.

## BACKGROUND

### A. Procedural History

      Indictment 10 Cr. 1205 (PAC), filed on December 7, 2010, charged Tomasetta and Hovanec with conspiracy to commit securities fraud, make false statements to auditors, make false statements in annual and quarterly reports filed with the SEC, and falsify the books and records of a public company, as well as substantive securities and accounting fraud-related charges. The indictment alleged that Tomasetta, the former Chief Executive Officer of Vitesse Semiconductor Corporation ("Vitesse"), and Hovanec, the former Chief Financial Officer and Executive Vice President of Vitesse, orchestrated a scheme from 2001 to 2006 to deceive Vitesse's investors about Vitesse's financial condition and results of operations. The fraudulent scheme was alleged to involve false statements to investors about Vitesse's revenues, sales returns, accounts receivable, and stock options. The indictment alleged that Vitesse publicly disclosed certain methods of accounting for its revenue, sales returns, and stock options, but its actual practices were materially different from its disclosures. The indictment further alleged that Tomasetta and Hovanec lied directly to investors and auditors about transactions that they negotiated and directed. In addition, the defendants were alleged to have intentionally caused their subordinates, including co-conspirators Yatin Mody ("Mody") and Nicole Kaplan

("Kaplan"), to effect transactions and entries into Vitesse's accounting records that they knew would result in false and misleading disclosures to investors.

Tomasetta and Hovanec proceeded to trial before the Honorable Paul A. Crotty on March 21, 2012. Mody and Kaplan testified pursuant to cooperation agreements about their participation in the fraudulent scheme and their direct dealings with both defendants concerning the fraud.[1] The Government's position is that their testimony was credible and was corroborated by documentary evidence and the testimony of other witnesses. However, the trial ended on April 24, 2012, when the Court declared a mistrial due to the jury's inability to reach a unanimous verdict on any of the counts in the Indictment. Following the trial, the defendants moved for a judgment of acquittal on a variety of grounds. By opinion and order dated June 6, 2012, Judge Crotty denied the motion as to the conspiracy count, but granted the motion as to the substantive counts.

After the first trial, the defendants were charged in a superseding indictment, Indictment S1 10 Cr. 1205 (PAC), filed on December 6, 2012, in one count with conspiracy to commit securities fraud and make false statements in annual and quarterly reports filed with the SEC. Tomasetta and Hovanec proceeded to trial on this Indictment before Judge Crotty on January 16, 2013. At trial, the jury heard essentially the same testimony, from many of the same witnesses who testified at the 2012 trial. The trial ended on February 19, 2013, when the Court declared a mistrial due to the jury's inability to reach a unanimous verdict on the single count in the Indictment. The defendants again moved for a judgment of acquittal, pursuant to Rule 29. By order dated June 11, 2013, Judge Crotty denied the motion.

### B. The Defendants' Guilty Pleas

On August 15, 2013, the case having been transferred to this Court, Tomasetta and Hovanec pleaded guilty to a superseding Information (S2 10 Cr. 1205) charging them with conspiracy to destroy, alter, or falsify records in contemplation of a federal investigation, in violation of Title 18, United States Code, Section 371 (the "Information").

#### 1. The Criminal Conduct

The superseding Information alleges, in substance, that the defendants conspired to fabricate documents relating to certain of Vitesse's stock option grants in order to convince internal investigators that there was no impropriety with the option grants. All of this was done with the knowledge that an investigation by the Securities and Exchange Commission ("SEC") was likely and with the intent to obstruct the anticipated SEC investigation.

During the relevant time, Vitesse granted stock options to employees pursuant to shareholder approved stock option plans. Vitesse's public filings for the 2001 to 2005 year-end

---

[1] Mody and Kaplan each pleaded guilty, pursuant to cooperation agreements, to a criminal Information charging them with securities fraud, falsifying the books and records of a public company, and conspiracy. They are awaiting sentencing before Judge Crotty.

The Honorable Jed S. Rakoff  Page 3
November 1, 2013

period indicated that the exercise price of all stock options was at least equal to the fair market value of Vitesse's stock price on the date of the grant. (Information ¶ 6).

The charge in the superseding Information revolves around the documentation for two particular stock option grants, one in April 2001 and one in October 2001. In each case, the minutes of the Compensation Committee meeting memorializing the option grants indicated that the exercise price for these shares was the closing price of Vitesse's stock on a prior day, which stock price was lower than the price on the date of the meeting. Specifically, minutes of a Compensation Committee meeting held on April 12, 2001 stated that the exercise price would be the fair market value of the stock on April 6, 2001 and minutes of a Compensation Committee meeting on October 25, 2001 stated that the exercise price would the fair market value of the stock on October 2, 2001. (*See* Information ¶¶ 9-10).

In or about November 2005, Mody received a press inquiry about Vitesse's stock option practices and contacted Vitesse's then-outside law firm ("Law Firm-1"). (Information ¶ 11). Law Firm-1 advised Mody and Tomasetta that it had concerns about the April 2001 and October 2001 option grants because the Compensation Committee meeting minutes indicated that Vitesse had granted options at an exercise price that was lower than the closing price of Vitesse's stock on the date of the meeting memorialized in the minutes, which raised a concern as to whether Vitesse had properly accounted for these option grants.[2] (*Id.*)

After discussions with Tomasetta and Hovanec, Mody created minutes of Compensation Committee meetings allegedly held telephonically on or about April 6, 2001 and October 2, 2001. (Information ¶ 12). At Tomasetta's request, the former Chairman of Vitesse's Compensation Committee signed these newly created documents. (*Id.*) Mody provided copies of these minutes to Law Firm-1. (*See Id.*)

On or about March 18, 2006, the Wall Street Journal published an article that raised questions about stock option practices at various companies, including Vitesse. (Information ¶ 13). Following this article, Law Firm-1 again raised concerns about Vitesse's option grants and about the fact that Compensation Committee minutes had been created years after the fact. (*Id.*) Law Firm-1 informed Tomasetta and Hovanec that because of the Wall Street Journal article, there was a significant possibility of an SEC investigation into Vitesse's option practices

---

[2] Specifically, if Vitesse had actually granted the options on the dates of the meetings (April 12 and October 25), but had used the lower closing prices on the prior dates as the exercise price for the options, then the options would have been "in-the-money" (*i.e.*, had an exercise price lower than the closing price on the day the options were granted). If the options were "in-the-money," then (1) Vitesse's disclosures in its SEC filings that "the exercise price of all stock options was at least equal to the fair market value of Vitesse's stock price on the date of the grant" were inaccurate, and (2) Vitesse's expenses for the relevant years were understated (and its net income overstated) because Vitesse did not record a compensation expense for any "in-the-money" options.

The Honorable Jed S. Rakoff                                                                                                 Page 4
November 1, 2013

and disclosures.[3] (*Id.*) At a meeting on April 11, 2006, Law Firm-1 also advised Vitesse's directors and management, including Tomasetta and Hovanec, that the after-the-fact creation (in the fall of 2005) of Compensation Committee meeting minutes for the April and October 2001 stock option grants raised questions about whether the meetings at issue had actually occurred. (*Id.*)

On April 11, 2006, Vitesse's Audit Committee retained a law firm ("Law Firm-2") to conduct an independent investigation into Vitesse's stock option grants. (Information ¶ 14). On April 12, 2006 – understanding that Law Firm-2 would access the computer used by the Vitesse employee who was responsible for actually typing the minutes of the meetings of Vitesse's Board of Directors and its committees ("the Assistant") – Tomasetta, Hovanec, and Mody, acting in concert, created documents that purported to be minutes of meetings of Vitesse's Compensation Committee on or about April 6, 2001 and October 2, 2001, authorizing option grants at those meetings. (Information ¶ 15). After creating these documents, Tomasetta, Hovanec, and Mody transferred electronic copies of the documents containing the two sets of minutes to the Assistant's computer and, in an effort to make it appear that the minutes were created at an earlier time, Tomasetta, Hovanec, and Mody reset the computer's internal clock to backdate the creation date of these purported board meeting minutes.[4] (*Id.*)

Tomasetta and Hovanec acknowledged at the plea hearing that they engaged in this action to impede or obstruct an anticipated SEC investigation (8/15/2013 Tr. 14-15, 30-31), which likely would have focused on Vitesse's option grant practices and disclosures.

### 2. The Plea Agreements

Tomasetta and Hovanec pleaded guilty pursuant to plea agreements. Each plea agreement provided for a sentencing range under the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") of 12 to 18 months' imprisonment. The parties agreed that (1) pursuant to U.S.S.G. § 2J1.2(a), the base offense level is 14; (2) pursuant to U.S.S.G. § 2J1.2(b)(3), because the offense involved the alteration of an essential or especially probative record, document, or tangible object, the base offense level is increased by two levels; and pursuant to U.S.S.G. § 3E1.1, and (3) the base offense level is decreased by three levels, all of which yielded an adjusted offense level of 13. Since neither defendant has any prior convictions, the sentencing range is 12 to 18 months.

---

[3] In fact, it is well-known that the Wall Street Journal's March 18, 2006 article sparked numerous investigations by the SEC into options grant practices and disclosures at public companies, as well as a number of criminal cases.

[4] On April 17, 2006, Tomasetta disclosed to Law Firm-2 that he, Hovanec and Mody had created these documents, transferred electronic copies of them to the Assistant's computer; and reset the computer's internal clock to backdate the creation date of these purported board meeting minutes. (Information ¶ 16).

The Honorable Jed S. Rakoff                                                                                     Page 5
November 1, 2013

      The plea agreements between the Government and the defendants each provide that "[i]n light of the unique factual circumstances of this case, pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the Government will recommend that the defendant be sentenced to a term of probation and will not recommend any of the special conditions of probation set forth in U.S.S.G. § 5B1.3(e)."

## RECOMMENDATION

      Here, the defendants have already withstood two lengthy trials on securities fraud charges. Under these circumstances, among other unique circumstances of this case, the Government recommends that the Court sentence the defendants to terms of probation. In addition, we note that the Probation Office also recommends that the Court not impose a sentence of incarceration upon the defendants.

Respectfully submitted,

PREET BHARARA

By: _____
John J. O'Donnell
Katherine R. Goldstein
David I. Miller
Assistant United States Attorneys
Telephone: (212) 637-2490/2262/2484

cc:    Dan Marmalefsky, Esq. (via E-Mail)
       Gary Lincenberg, Esq. (via E-Mail)